UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSHUA GOODWIN,

                           Plaintiff,

              v.

MR. DAVID NAPOLI, Supt.,
MR. S. POST, Sgt.,
MR. P. JAYNE, C.O.,
ADMINI – MS. FELKER,
NURSE DIANE WEED,
C.O. J. BERBARR, and
C.O. CLEVELAND,

                           Defendants.

_____

REPORT
and
RECOMMENDATION

11-CV-01032V(F)

APPEARANCES:       JOSHUA GOODWIN, *Pro Se*
                      98-B-1542
                      Sing Sing Correctional Facility
                      354 Hunter Street
                      Ossining, New York  10562-5498

                      ERIC T. SCHNEIDERMAN
                      New York State Attorney General
                      Attorney for Defendants
                      DENETRA D. ROBETS
                      Assistant Attorney General, of Counsel
                      350 Main Street
                      Suite 300A
                      Buffalo, New York  14202

## **JURISDICTION**

On January 28, 2014, this case was referred to the undersigned by Honorable

Richard J. Arcara[1] for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion for summary judgment, filed November 4, 2013 (Dkt. 24).

_____

[1] By Text Order entered March 7, 2016, the case was reassigned to Honorable Lawrence J. Vilardo.

## BACKGROUND

On December 5, 2011, Plaintiff Joshua Goodwin ("Plaintiff"), proceeding *pro se*, commenced this civil rights action alleging violations of his Eighth Amendment rights when Defendants, all employees of New York State Department of Corrections and Community Supervision ("DOCCS"),[2] refused Plaintiff his knee brace while being transported by bus for a court appearance, causing Plaintiff to fall while exiting the bus on October 20, 2009 ("First Claim"), and ordering, on November 16, 2009, Plaintiff to ascend stairs despite a flats permit[3] which prevented Plaintiff from climbing stairs ("Second Claim").  Defendants' answer was filed October 5, 2012 (Dkt. 11).

On November 4, 2013, Defendants filed the instant motion for summary judgment (Dkt. 24) ("Defendants' motion"), attaching a Statement of Undisputed Facts (Dkt. 42-1) ("Defendants' Statement of Facts"), Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 42-2) ("Defendants' Memorandum"), the Declarations of Assistant Attorney General ("AAG") Stephanie Joy Calhoun (Dkt. 24-3) ("AAG Calhoun Declaration"), with exhibits A through E ("Defendants' Exh(s). __"), John Berbary (Dkt. 24-4) ("Berbary Declaration"), James Cleveland (Dkt. 24-5) ("Cleveland Declaration"), Catherine Felker, RN (24-6) ("RN Felker Declaration"), Paul Jayne (Dkt. 24-7) ("Jayne Declaration"), Benjamin Oakes, PA (Dkt. 24-8) ("PA Oakes's Declaration"), Olayemi Odeniyi (Dkt. 24-9) ("Odeniyi Declaration"), Steve Post (Dkt. 24-10) ("Post Declaration"), and Diana Knapp, RN (Dkt. 24-11) ("RN Knapp Declaration").

---

[2] By Order filed February 21, 2012 (Dkt. 3), this action was dismissed as against Defendant Southport Superintendent David Napoli for lack of personal involvement.
[3] A "flats permit" is intended to prevent a physically infirm inmate from climbing or descending stairs by requiring the inmate be housed in the correctional facility where minimum use of stairs is necessary to reach essential parts of the building.  *See Lewis v. Cunningham*, 2011 WL 1219287, at * 1 (S.D.N.Y. Mar. 14, 2011) (discussing what a flats permit is).

On December 30, 2013, Plaintiff filed his Statement of Material Facts in Dispute (Dkt. 28) ("Plaintiff's Fact Statement"), and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. 29) ("Plaintiff's Response").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion should be GRANTED.

## **FACTS**[4]

The parties do not dispute that Plaintiff Joshua Goodwin ("Plaintiff" or "Goodwin"), an inmate within the care and custody of New York State Department of Corrections and Community Supervision ("DOCCS"), suffers from arthritis in his knees and back.  At all times relevant to this action, Plaintiff was incarcerated at Southport Correctional Facility in Pine City, New York ("the correctional facility" or "Southport"), and Defendants were DOCCS employees assigned to Southport.

Prior to being transferred to Southport, Plaintiff received multiple medical permits from various correctional facilities allowing Plaintiff to use, at various times, a knee brace on his left knee, a back brace, and a cane.  On April 25, 2009, Plaintiff obtained his last medical permit prior to being transferred from Five Points Correctional Facility ("Five Points"), to Southport, [5] and allowed for use of a cane, back brace, and a knee brace containing metal on the sides ("the Five Points permit").  The Five Points permit specified that the knee brace "may be removed by security or medical for inspection." The Five Points permit further advised Plaintiff to "carry permit on person at all times," and instead of listing an expiration date, stated the permitted medical equipment was

---

[4] Taken from the pleadings and motion papers filed in this action.
[5] Filed as Defendants' Exh. B at Bates No. 000880.

subject to "return on demand."  Because medical permits are valid only in the issuing

correctional facility, upon transferring to another correctional facility, Plaintiff was

required to request a new medical permit.  It is undisputed that upon his transfer to

Southport, [6] Plaintiff did not request a new medical permit for his knee brace, back

brace, or cane.  According to Plaintiff, although he knew the Five Points permit was not

valid upon being transferred to Southport, Plaintiff continued to wear the knee brace, yet

failed to advise the corrections officers out of fear the knee brace would be confiscated.

Plaintiff's Dep. Tr.[7] at 32-33.  Plaintiff maintains that upon arriving at Southport and

being examined by a physician to whom Plaintiff inquired about obtaining a new medical

permit for his knee brace, with the physician responding the request would be

considered but that inmates were not permitted to possess certain items at Southport,

and Plaintiff never heard anything more about the requested medical permit.  *Id.* at 34.

Accordingly, Plaintiff continued to withhold from the corrections officers the fact that he

wore a knee brace out of fear the knee brace would be confiscated for want of the

required medical permit.  *Id.* at 34-35.

**October 20, 2009 Incident**

On October 20, 2009, Plaintiff was scheduled to be transported for a court

appearance by bus from Southport to Downstate Correctional Facility in Fishkill, New

York ("Downstate").  While Plaintiff was in Southport's "draft area" being processed for

the transport to Downstate, Southport's security staff became aware that Plaintiff was

wearing a knee brace containing metal on the sides, for which Plaintiff did not possess

the required permit.  Defendant Draft Sergeant Post ("Post"), placed a call to

---

[6] The record does not indicate the date Plaintiff was transferred to Southport.
[7] References to "Plaintiff's Dep. Tr." are to the pages of the transcript of Plaintiff's deposition, portions of
which are filed as Defendants' Exh. B.

Southport's medical unit where Defendant Nurse Administrator Catherine Felker
("Felker"), confirmed no medical permit had been issued at Southport for Plaintiff's knee
brace, but who also stated that because the knee brace had metal in it, the brace
supported knee instability.  Felker Declaration ¶¶ 6-7 and Exh. B (Felker's Investigative
Response dated November 5, 2009 ("Felker's Investigative Response")).  From
reviewing Plaintiff's medical chart, Felker discovered that Plaintiff had a "lock of flats"
order ("flats permit"), for knee pain and that Plaintiff had a history of knee instability.  *Id*.
Based on this information, and realizing that Plaintiff would likely need to climb stairs
into and out of the bus, as well as at Plaintiff's court appearance, Felker advised Post to
allow Plaintiff to wear the knee brace despite Plaintiff's lack of the required medical
permit.  *Id*.  A few minutes after Felker spoke with Post, RN von Hagn ("von Hagn"),[8]
received a similar call, and von Hagn likewise responded that Plaintiff should be
permitted to wear the knee brace on the bus and to his scheduled court appearance.[9]
Post then inquired of RN Diana Knapp,[10] who was present in the draft area, whether
Plaintiff should be permitted to wear the knee brace and Knapp responded that Plaintiff
should not be allowed to wear the knee brace without any medical permit for the brace
having been issued at Southport.  Based on Knapp's response and Post's own
understanding that an inmate could fashion a weapon out of metal parts removed from
medical assistive devices, Post ordered Plaintiff to remove the knee brace prior to
boarding the bus to Downstate.  Plaintiff maintains that when he protested the order,
Knapp told Plaintiff to "stop being a Bitch" and give up the brace, and Defendant C.O.
Jayne ("Jayne"), told Plaintiff "you will get your ass on the bus one way or another."

---

[8] von Hagn is not a Defendant to this action.
[9] The record does not indicate who placed the call answered by von Hagn.
[10] R.N. Knapp is sued under her maiden name, "Weed."

Complaint, First Claim.  Plaintiff then complied and removed the knee brace prior to
boarding the bus.

Just before 7:00 P.M. on October 20, 2009, after arriving at Downstate, Plaintiff
attempted to descend the bus stairs, but his left knee, then unsupported by the
confiscated knee brace, gave way when plaintiff slipped on the second stair step.
Another inmate to whom Plaintiff had been shackled did not fall but remained standing
on the last step of the bus stairs when Plaintiff fell to the ground, hitting his head, lower
back, and right arm on the pavement.  *Id.* at 38.  Plaintiff lost consciousness for five
minutes and a "code blue" was issued at 6:55 P.M.

At 7:05 P.M., approximately five minutes after Plaintiff's fall, he was evaluated by
Downstate Nurse Practitioner Elijah Stevens ("Stevens"),[11] who observed Plaintiff was
lying face up on the pavement at the bottom of the bus stairs doors with his legs slightly
under the bus.  Plaintiff was able to correctly answer questions and stated he fell down
the bus stairs because he was not allowed to wear his knee brace and his knee gave
way.  Plaintiff also stated he did not know whether he lost consciousness, but that he
landed buttocks first, before striking the pavement with his right elbow and left knee and
complained that his back hurt.  Plaintiff's vital signs were checked and his blood
pressure was 130/90, pulse was 60, respiration rate was 28, deep tendon reflexes were
normal, upper and lower extremity reflexes were positive, and Plaintiff had a positive
"cardinal gaze."  An ambulance was called and, upon consulting with Erie County
Medical Center ("ECMC") in Buffalo, New York, Plaintiff was taken on a back board by
ambulance to St. Luke's Hospital in Fishkill, New York ("the hospital"), where X-rays
taken of Plaintiff's right elbow were negative, and Plaintiff's grip was noted as strong

---

[11]  Stevens is not a Defendant to this action.

and equal bilaterally.  Plaintiff was observed at the hospital as having some ambulatory difficulty attributed to an old injury, and wearing a brace on his left leg and chest.  At 12:10 A.M. on October 21, 2009, Plaintiff, who was not admitted to the hospital, was returned to Downstate where Plaintiff was admitted for observation by DOCCS physician Dr. Goulding to Downstate's Inpatient Care Unit ("ICU"), from which Plaintiff was discharged on October 22, 2009.  On October 27, 2009, Plaintiff was transferred from Downstate back to Southport.  On October 28, 2009, Plaintiff received from Southport a medical permit for a neoprene knee brace.

**November 16, 2009 Incident**

At 10:40 A.M., on November 16, 2009, Plaintiff, who did not have a current flats permit, was escorted within Southport by Defendant C.O.s John Berbary ("Berbary"), and James Cleveland ("Cleveland"), back to his cell from a dental call-out when, while ascending stairs and attempting to step onto the landing between the first and second floors, Plaintiff's left knee gave out and Plaintiff collapsed and slid down the stairs, hitting his left hip and lower back.  Cleveland used his hands and upper legs to brace Plaintiff's shoulders and back and stopped Plaintiff's slide at the second stair from the bottom of the stair case.  The Block Sergeant and Southport's medical unit were immediately notified, and Plaintiff was transported by stretcher to Southport's hospital where he was examined by Benjamin Oakes, PA ("Oakes"),[12] who noted Plaintiff reported hitting his left hip and lower back when he fell down the stairs, but that Plaintiff did not lose consciousness.  Upon examination by Oakes, Plaintiff was oriented as to time, space, and place, had no head trauma, shortness of breath, abdominal pain, numbness, blurred vision, or speech problems, but was tender over his lumbar sacral

---

[12] Oakes is not a Defendant to this action.

spine, and over the lateral aspect of his external left hip, but with full range of motion. Plaintiff's left knee was swollen but with full range of motion and without pain upon palpitation, and Plaintiff was upset that he had not yet received a knee brace.[13]  Oakes conducted a neurological examination which showed Plaintiff's cranial nerves were intact.  At 11:15 A.M., Plaintiff was admitted into Southport's infirmary and, at 12:45 P.M., was transported by van to the hospital for x-rays, returning at 3:10 P.M., at which time Plaintiff complained of back pain for which Plaintiff was given ibuprofen.  Plaintiff slept through the night in the infirmary without incident.

Oakes next saw Plaintiff at 10:20 A.M., on November 17, 2016, at which time Plaintiff stated he felt better and was able to ambulate without difficulty.  Plaintiff did not complain of headache, nausea, vomiting, chest pain, or shortness of breath, had no numbness, was alert and oriented as to time, space and place, and in no acute distress, had full range of motion including in his external hip, easily stood, and left knee was unchanged.  Plaintiff was discharged with his present medications and ordered to follow up as needed.


## DISCUSSION

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[13] It is unclear why Plaintiff had not yet received a knee brace when he had been issued a medical permit for a knee brace at Southport on October 28, 2009.

242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). The court is required to construe the evidence in the light most favorable to the non-moving party. *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes*

*Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).   "[F]actual issues created

solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine'

issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir.

1996).

    Plaintiff's claims seek damages for alleged violations of his constitutional rights

pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who,

acting under color of state law, deprive an individual of rights, privileges, or immunities

secured by the Constitution and laws of the United States.  Section 1983, however,

does not itself provide a source of substantive rights, but instead provides the

mechanism by which a plaintiff may seek vindication of federal rights conferred

elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).   Here, Plaintiff claims

violations of his Eighth Amendment protection against cruel and unusual punishment in

denying Plaintiff permission to wear his knee brace when boarding the bus to

Downstate on October 20, 2009 ("First Claim"), and directing Plaintiff to ascend stairs

while being escorted from a dental call-out on November 16, 2009 ("Second Claim").

    Defendants argue in support of summary judgment on both of Plaintiff's claims

that Plaintiff cannot establish the subjective element for an Eighth Amendment violation,

Defendants' Memorandum at 3-12, that Defendants' alleged actions demonstrate, at

most, negligence which does not support an Eighth Amendment violation, *id.* at 13, and,

alternatively, that Defendants are qualifiedly immune from liability with regard to both

incidents.  *Id.* at 13-17.  In opposition to summary judgment, Plaintiff maintains that the

record establishes Defendants were deliberately indifferent to Plaintiff's need for the

knee brace and flats order, Plaintiff's Response at 2-4, and that such deliberate

indifference bars Defendants from the shield of qualified liability with regard to Plaintiff's claims.  *Id*. at 5.

## 2.    Eighth Amendment

To prevail on an Eighth Amendment claim based on inadequate medical care or unsafe conditions, a plaintiff must establish (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  An Eighth Amendment deliberate indifference claim has both objective and subjective elements.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration or extreme pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal citation and quotation marks omitted).  "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions of confinement' claim."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (only deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation)).  "Subjectively, the official charged . . . must act with a sufficiently culpable state of mind."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation and internal quotation marks omitted).  "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.  *Hathaway*, 37 F.3d at 66 (citing *Farmer*, 511 U.S. at 835).  For a prison official to

act with deliberate indifference, he must both know of and disregard an excessive risk to an inmate's health or safety.  *Id.*

A person acts with deliberate indifference to an inmate's health or safety only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other."  *Id.* at 836.  It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate.  *Id.*  An inmate is not required to show that the official acted or failed to act believing that harm actually would befall an inmate; it is sufficient that the official acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Id.* at 837.  Supreme Court "'cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.'"  *Id.* at 838 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).  "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court] cases be condemned as the infliction of punishment."  *Id.*  "The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or *so obvious that it should be known.*"  *Id.* at 836 (italics added) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, pp. 213-14 (5th ed. 1984); Restatement (Second) of Torts § 500 (1965)).

With regard to Plaintiff's claims that Defendants failed to protect him from danger in ordering Plaintiff to remove the knee brace prior to boarding the bus to Downstate on October 20, 2009, and to ascend stairs on November 16, 2009, despite Plaintiff's having been issued a valid flats permit requiring Plaintiff not ascend or descend stairs, the court assumes, for the sake of this discussion, that the objective prong of Plaintiff's Eighth Amendment failure to protect claim has been met, *i.e.*, that such directions by Defendants subjected Plaintiff to the possibility that Plaintiff would fall and sustain serious injury. Accordingly, the court turns its attention to the subjective prong of Plaintiff's Eighth Amendment failure to protect claim – whether Defendants were deliberately indifferent to the danger posed by ordering Plaintiff to remove his knee brace prior to boarding the bus to downstate and to ascend stairs when being returned from a dental call-out.

Where, as here, an inmate plaintiff alleges the defendant prison employees failed to protect the plaintiff from harm, the Eighth Amendment "imposes a duty on prison officials 'to take reasonable measures to guarantee the safety of inmates in their custody.'" *Garcia v. Witkowski*, 988 F.Supp.2d 360, 361 (W.D.N.Y. 2013) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 832-33))). "A failure-to-protect claim requires a showing that prison officials acted with 'deliberate indifference' to the inmate's safety." *Id.* (citing *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988)). A prison official acts with deliberate indifference toward an inmate's safety only if the official, despite knowledge that the inmate faces a substantial risk of serious harm, disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 835-37. *See Garcia*, 988

F.Supp.2d at 362 ("in failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific harm to his safety."). In the instant case, the evidence in the record establishes the absence of any issue of fact which, if decided in Plaintiff's favor, would support a finding that Defendants, by ordering Plaintiff to remove the knee brace and board the bus on October 20, 2009, as well as to ascend the stairs to Southport's second flood on November 16, 2009, acted with deliberate indifference in failing to protect Plaintiff from a significant risk of harm.

In particular, with respect to the October 20, 2009 incident, Plaintiff has failed to establish any genuine issue of material fact which, if decided in Plaintiff's favor, would establish that Defendant Post, Jayne, or Knapp was deliberately indifferent to the danger posed by ordering Plaintiff to remove his knee brace prior to boarding the bus to downstate; rather, the record establishes that Post, Jayne and Knapp, upon discovering Plaintiff was wearing a knee brace, inquired as to whether Plaintiff had the necessary medical permit for the knee brace. Post Declaration ¶¶ 7-8; Jayne Declaration ¶¶ 6-8; Knapp Declaration ¶ 8. As Post and Jayne explained, the requirement that inmates obtain medical permits for such assistive devices as knee braces fulfills a legitimate penological interest because inmates can remove parts of various medical devices, particularly metal parts, which can then be fashioned into weapons. Post Declaration ¶¶ 9-10; Jayne Declaration ¶¶ 8-9. To limit this threat, each DOCCS facility requires an inmate to request a medical permit for an assistive device, and such permit is to be kept with the inmate at all times and presented to corrections officers when subjected to routine frisks such as when being drafted into and out of any DOCCS facility. Post

Declaration ¶¶ 11-12.  Requiring an inmate to possess a permit for a medical assistive device has been held not to violate the Eighth Amendment's proscription against cruel and unusual punishment.  *See*, *e.g.*, *Grant v. Smaldone*, 2009 WL 2823736, at * 3, 7 (N.D.N.Y. Aug. 31, 2009) (granting summary judgment on inmate plaintiff's Eighth Amendment claim in favor of defendants whose failure to comply with inmate's medical permit exempting inmate from "black box" restraint provision (device covering keyholes in handcuffs to prevent inmate from picking handcuff lock while being transported outside correctional facility) interfered with the inmate's ability to retrieve his nitroglycerine pills, because inmate, in contravention of DOCCS security standards, did not have medical permit on his person and a check with the correctional facility's medical department failed to confirm inmate had been issued the medical permit). *Contrast Carlson v. Parry*, 2012 WL 1067866, at * 8 (W.D.N.Y. Mar. 29, 2012) (denying summary judgment on Eighth Amendment failure to protect claim where inmate plaintiff showed defendant corrections officer his damaged prosthetic leg in support of his claim that he could not stand for long periods of time or walk any significant distance, yet defendant directed inmate to walk 700 yards daily to attend substance abuse programs).  Significantly, Plaintiff concedes that as of October 20, 2009, his previous medical permits for the knee brace were not valid at Southport, having expired upon being transferred to new correctional facilities, that Plaintiff had failed to request a new medical permit for the knee brace upon his most recent transfer to Southport, and that Plaintiff, upon obtaining a medical permit for the knee brace, was required to keep such permit on his person at all times.  Plaintiff's Dep. Tr. at 31-33.  Accordingly, Defendants cannot be found liable for an Eighth Amendment failure to protect claim based on their

compliance with DOCCS security requirements. At most, Defendants' conduct in ordering Plaintiff to remove the knee brace supports only a finding of negligence which is insufficient to support an Eighth Amendment failure to protect claim. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("To meet the subjective element [of an Eighth Amendment claim], the plaintiff must show that the defendant acted with 'more than mere negligence.'" (quoting *Farmer*, 511 U.S. at 835)). Further, even if, as Plaintiff alleges, Complaint, First Claim, Defendants Jayne and Knapp used inappropriate language in ordering Plaintiff to remove the knee brace, such language cannot support an Eighth Amendment claim. *See Barnes v. County of Monroe*, 85 F.Supp.3d 696, 739 (W.D.N.Y. 2015) (holding no Eighth Amendment claim lies based on verbal harassment as such conduct is not actionable under § 1983 (citing cases)). Nor, given that these Defendants were compliant with security requirements regarding metal assistive devices does such rough language create a triable issue of fact as to whether Defendants acted with deliberate indifference to apparent risks to Plaintiff's safety.

Insofar as Plaintiff's First Claim is asserted against Felker, the record is devoid of any evidence Felker was personally involved in the decision to have Plaintiff remove the knee brace prior to boarding the bus to Downstate; rather, Felker maintains, and Plaintiff does not dispute, that upon receiving the October 20, 2009 telephone call from Post inquiring as to whether Plaintiff had been issued a medical permit for the knee brace, Felker checked with Knapp who had correctly determined that Plaintiff did not have a current permit for the brace. Felker Declaration ¶ 6. Felker, however, did not instruct Plaintiff to remove the knee brace, nor did Felker give Post permission to send Plaintiff to Downstate without the brace. *Id.* ¶ 7. To the contrary, Felker advised Post

that if Plaintiff's knee brace had metal in it, the brace was likely used to support knee instability and for that reason Felker even advised Post that Plaintiff should be permitted to wear the knee brace during the trip to Downstate and the court appearance because Plaintiff "would be climbing stairs in and out of the bus and probably into court as well." *Id.* Exh. B (Investigative Response).  Accordingly, this record fails to establish the required personal involvement of Felker in the alleged constitutional deprivation.  *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable. . . .'" (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004))).

Accordingly, there is no evidence in the record upon which a reasonable jury could find Defendants were deliberately indifferent to Plaintiff's safety with respect to the October 9, 2009 incident; rather, the evidence establishes only that on October 20, 2009, Defendants investigated whether Plaintiff possessed the required medical permit for the knee brace and, only upon determining that none had been issued directed Plaintiff to remove the knee brace and board the bus.  As such, there is no material issue of fact that these Defendants acted with deliberate indifference to Plaintiff's safety. Defendants' motion for summary judgment should thus be GRANTED as to Plaintiff's First Claim regarding the October 20, 2009 incident.

With regard to the November 16, 2009 incident, although evidence in the record establishes that as of November 16, 2009, Plaintiff had a flats permit, Felker Declaration Ex. B (Investigative Response – stating that on October 20, 2009, Felker reviewed Plaintiff's chart and determined Plaintiff "had a lock on flats due to knee pain . . . "),

there is no evidence in the record from which a reasonable jury could conclude that Plaintiff protested ascending the stairs on November 16, 2009, advised Defendants of the flats permit, or that Defendants insisted Plaintiff ascend the stairs despite such protest.  That Defendants did not act with deliberate indifference to Plaintiff's serious medical needs is underscored by the fact that, as Plaintiff concedes, Plaintiff's Dep. Tr. at 60-61,[14] when Plaintiff began sliding down the stairs, Cleveland used his hands and upper legs to physically apply pressure to Plaintiff's shoulders and back, thereby stopping Plaintiff's fall down the stairs.  Cleveland Declaration ¶¶ 6-8; Berbary Declaration ¶¶ 6, 10.  Indeed, that at the time of the November 16, 2009 incident, Plaintiff was being escorted back to his cell from a dental call-out establishes Plaintiff must have earlier and without incident descended the stairs en route to the dental call out.  No facts are therefore present from which is may be reasonably inferred that Defendants were deliberately indifferent to a known risk of serious harm to Plaintiff prior to ordering Plaintiff to ascend the stairs on November 16, 2009.  At most, Defendants could only be found negligent for failing to inquire as to whether Plaintiff had a flats permit and, as discussed above in connection with the October 20, 2009 incident, Discussion, *supra*, at 16, negligence in insufficient to establish an Eighth Amendment violation.

Summary judgment should thus be GRANTED to Defendants on Plaintiff's Second Claim regarding the November 16, 2009 incident.

---

[14] Plaintiff incorrectly identifies Berbary, rather than Cleveland, as stopping his fall down the stairs on November 16, 2009.

5.      **Due Process**

On the form complaint Plaintiff used to file the instant action, Plaintiff checked a box indicating he was asserting a denial of due process claim.  Complaint at 4.  Although Defendants have not argued in support of summary judgment on any such claim, the court addresses it in the interest of completeness.

It is settled that to assert a due process claim, an inmate must show he has been deprived of a protected liberty interest.  *Sandin v. Conner*, 515 US. 472, 483-84 (1995).  In the instant case, Plaintiff has not alleged the requisite deprivation of a protected liberty interest to support such claim, nor is there any evidence in the record of such a deprivation.  In fact, the record fails to establish that Plaintiff was ever subjected to any disciplinary measures attributable to his falls in connection with either the October 20, 2009 incident or the November 16, 2009 incident.

Despite Plaintiff's protestations that his physical infirmities required him to wear a knee brace when boarding the bus on October 20, 2009, and rendered him unable to ascend the stairs on November 16, 2009, among the Fourteenth Amendment's liberty interests retained by persons involuntarily committed to the custody of the state, including "lawful confinement [ ] for penal purposes," are the "right to adequate food, shelter, clothing and medical care," as well as to "safe conditions."  *Youngberg v. Romeo*, 457 U.S. 307, at 315 (1982).  In the instant case, however, Plaintiff did not suffer any Eighth Amendment violation based on failure to protect but, rather, at most, was subjected to negligence by Defendants which is insufficient to support a Fourteenth Amendment due process claim.  *See Davidson v. Cannon,* 474 U.S. 344, 347-48 (1986) (holding defendant prison officials' negligence in failing to protect inmate plaintiff from

another inmate, leading to inmate's serious injury, did not "approach the sort of abusive government conduct that the Due Process clause was designed to protect."). Summary judgment must thus be GRANTED as to Plaintiff's Fourteenth Amendment due process claim.

### 6.    Qualified Immunity

As a further alternative, Defendants maintain they are qualifiedly immune from liability on Plaintiff's claims. Defendants' Memorandum at 13-17. Plaintiff argues in opposition that Defendants' deliberate indifference to Plaintiff's need for the knee brace and a flats order preclude Defendants from being qualifiedly immune with regard to both the First and Second Claims. Because this argument is addressed only in the alternative should the District Judge disagree with the initial recommendation that Defendants be granted summary judgment on the merits of both of Plaintiff's claims, the existence of genuine issues of material facts precluding summary judgment on the merits of either or both of Plaintiff's claims is assumed for the sake of this alternative discussion.

Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990). "To determine whether a right was clearly established, we consider 'whether the right in question was defined with reasonable specificity,' 'whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question,' and 'whether under preexisting law

a reasonable defendant officer would have understood that his or her acts were unlawful.'" *Barnes v. Furman*, 629 Fed.Appx. 52, 55-56 (2d Cir. Oct. 22, 2015) (quoting *Dean v. Blumental*, 577 F.3d 60, 68 (2d Cir. 2009)). Even if the right at issue were clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (internal quotation marks and citation omitted). Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991). In the instant case, as alleged in the Complaint, the facts, construed in the light most favorable to Plaintiff as required on summary judgment, demonstrate Defendants are shielded by qualified immunity to believe their actions did not violate Plaintiff's Eighth Amendment rights in connection with both the incidents of October 20, and November 16, 2009.

In particular, with regard to Plaintiff's First Claim pertaining to the October 20, 2016 incident, it is undisputed that Plaintiff did not possess the required medical device permit for the knee brace Plaintiff desired to wear while being transported by bus from Southport to Downstate for a court appearance. As explained by Defendants Post, Jayne, and Knapp, Discussion, *supra*, at 14, DOCCS's policies requiring the confiscation of any assistive device for which an inmate does not possess a valid

medical permit are reasonably related to legitimate penological interests in maintaining safety and security within correctional facilities.  Accordingly, it was reasonable for Defendants Post, Jayne and Knapp to believe their actions in ordering Plaintiff to remove the knee brace - for which Plaintiff did not possess the necessary permit - before boarding the bus for transport to Downstate did not violate Plaintiff's Eighth Amendment rights and such Defendants are entitled to qualified immunity on Plaintiff's First Claim pertaining to the October 20, 2009 incident.

With regard to Plaintiff's Second Claim pertaining to the November 16, 2009 incident, Plaintiff does not allege he ever produced the flats permit or even informed Defendants Berbary and Cleveland that he was unable to ascend stairs prior to falling down the stairs, and, in fact, Plaintiff was able to use the stairs without incident while descending to his dental call appointment.  Further, although Plaintiff maintains he had yet to receive the knee brace for which a medical permit had been issued on October 28, 2009, Plaintiff does not allege that he informed Defendants Berbary and Cleveland that he had yet to be provided with the knee brace or that he required the knee brace to ascend stairs.  Accordingly, Defendants Berbary and Cleveland are entitled to qualified immunity on Plaintiff's Second Claim.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' motion (Dkt. 24) should be GRANTED; the

Clerk of the Court should be directed to close the file.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 8, 2016
            Buffalo, New York

      **ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

      <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

      Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

                             /s/ *Leslie G. Foschio*

                    _____

                            LESLIE G. FOSCHIO
                UNITED STATES MAGISTRATE JUDGE

DATED:      September 8, 2016
              Buffalo, New York